UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:21-cv-00089-FDW-DCK

| | |
|---|---|
| SHANNON POWERS, on behalf of himself and all others similarly situated, ) ) ) Plaintiff, ) ) vs. ) ) ONE TECHNOLOGIES, LLC, ) ) Defendant. ) ) | ORDER |

THIS MATTER is before the Court on Defendant One Technologies, LLC's Motion to Dismiss (Doc. No. 25) for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The Motion has been fully briefed and is ripe for review. For the reasons below, Defendant's Motion to Dismiss is GRANTED.

## I.  BACKGROUND

Plaintiff Shannon Powers ("Plaintiff") is a citizen of Pineville, North Carolina. (Doc. No. 1, p. 2). Defendant One Technologies, LLC ("Defendant") is a Texas corporation with its principal place of business in Dallas, Texas. (Doc. No. 3). According to the Complaint,[1] Plaintiff alleges Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and North Carolina General Statute § 75-100 by knowingly sending, or at their direction had someone send, autodialed telemarketing text messages marketing its credit score monitoring services to him. (Doc. No. 1, pp. 1-3).

---

[1] The allegations and assertions of the pleadings and supporting affidavits are to be read in the light most favorable to Plaintiff. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

1

According to the Complaint, Plaintiff received at least four automated marketing text messages within a single year. (Doc. No. 1, p. 4). Plaintiff claims the text messages were sent by various 10-digit numbers or non-recognizable email addresses, all referencing credit score information. Id. at 3. Furthermore, the messages contained a "link that, when clicked, redirects to a landing page containing another link that, when clicked, re-directs to Defendant's Freescore360.com page." Id.

Defendant denies involvement in the text messages at issue. (Doc. No. 23, p. 1). Defendant does admit it engages independent contractors to advertise their products; however, Defendant does not allow the contractors to send text messages on their behalf like the ones Plaintiff received. (Doc. No 25-2, pp. 2, 17). With the consent of both parties, pre-discovery subpoenas were issued in order to identify the companies involved in sending the text messages. (Docs. Nos. 23, 24). Following early discovery, the only connection found between Defendant and the text messages at issue was through a California-based affiliate of the Defendant. (Doc. No. 25-2, p. 4). Defendant alleges the California-based affiliate engaged its own subcontractor and that subcontractor used one of the domain names found in the text messages. Id. at 5. Defendant asserts it "did not engage the California-based affiliate network or any of its subcontractors to send text messages, and has no evidence that it made any sales or received any website visits by reason of text message marketing." Id. at 5.

Defendant has filed a Motion to Dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). (Doc. No. 25). Plaintiff filed a memorandum in opposition outlining his claims for personal jurisdiction (Doc. No. 29), and Defendant has replied. (Doc. No. 32). Both parties have filed Surreplys with the court, proclaiming their final arguments. (Docs. Nos. 36, 37).

## II.     APPLICABLE LAW

Upon a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the burden is on the plaintiff to make a prima facie showing of the grounds for jurisdiction. See Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014).  When the court's analysis rests solely on the pleadings and supporting affidavits, the court will read the pleadings and affidavits in the light most favorable to the plaintiff. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

For the court to exercise personal jurisdiction over non-resident defendants, it must comply with the long-arm statute of the forum state, and it must meet the requirements of the Due Process Clause of the Fourteenth Amendment. Christian Sci. Bd. Of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). North Carolina's long-arm statute is interpreted to extend jurisdiction to the extent allowed by the Due Process Clause, thereby merging the jurisdictional analysis into a single due process inquiry. Id.  The paradigmatic case for determining if personal jurisdiction exists is International Shoe, which requires that "minimum contacts" exist between the defendant and the forum state such that "the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted); see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011).

A court may exercise general personal jurisdiction over a defendant when that defendant is essentially "at home" in the forum. See Daimler AG v. Bauman, 571 U.S. 117, 127 (2014).  For a corporate (or other entity) defendant, "at home" will usually mean their domicile and their principal place of business. See id. at 137. When general personal jurisdiction does not apply, a

3

court may still exercise specific personal jurisdiction if the plaintiff makes a sufficient showing that 1) the defendant purposefully availed themselves of the forum and the benefits and protections of its laws, 2) the plaintiff's claim arises from the purposefully availing conduct, and 3) the exercise of jurisdiction would be constitutionally reasonable. See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009).

Jurisdiction must be based on an individual's actions and "not be manufactured by the conduct of others." Chung v. NANA Development Corp., 783 F.2d 1124, 1127 (4th Cir. 1986). Rather, "the defendant's conduct and connection with the forum State [must be] . . . such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). However, the actions of a principal corporation's agent may be sufficient to subject the principal to the jurisdiction of a forum if an agency relationship is found. Bauer v. Douglas Aquatics, Inc., 698 S.E.2d 757, 766-67 (N.C. Ct. App. 2010) (holding the principal "can be considered legally responsible for the acts of its apparent agent . . . for purposes of personal jurisdiction"); N.C. GEN. STAT. § 1-75.2(3) (2013) ("[A]cts of the defendant" subjecting it to personal jurisdiction "include[ ] any person's acts for which the defendant is legally responsible.").

### III. ANALYSIS

Here, there is no need for extensive analysis of general personal jurisdiction. Plaintiff does not allege Defendant is a resident of or has its principal place of business in North Carolina. (Doc. No. 1, p. 2). As for specific personal jurisdiction, the three elements laid out in Consulting Eng'rs must be met. For the reasons below, Defendant did not purposefully avail itself to the forum, and

4

the Court does not have specific personal jurisdiction over Defendant directly or through an agency relationship.

**A. Specific Personal Jurisdiction**

Specific personal jurisdiction over a foreign defendant requires minimum contacts that "give rise to the liabilities sued on." International Shoe, 326 U.S. at 317. These contacts must result from the defendant's own conduct, thereby purposefully availing themselves of the forum. See World-Wide Volkswagen Corp., 444 U.S. at 297; see also J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 877 (2011). A defendant that has accepted the privileges of directing business at the forum state has also accepted the burden of appearing before its courts, even if they have never physically entered the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).

In Consulting Eng'rs, the Fourth Circuit provided a non-exhaustive list of factors to consider when weighing whether the defendant purposefully availed themselves of the forum state:

[1] whether the defendant maintains offices or agents in the forum state,
[2] whether the defendant owns property in the forum state,
[3] whether the defendant reached into the forum state to solicit or initiate business,
[4] whether the defendant deliberately engaged in significant or long-term business activities in the forum state,
[5] whether the parties contractually agreed that the law of the forum state would govern disputes,
[6] whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,
[7] the nature, quality and extent of the parties' communications about the business being transacted, and
[8] whether the performance of contractual duties was to occur within the forum.

561 F.3d at 278 (internal citations omitted). Even with the aid of these factors, this analysis is heavily fact-dependent and "not susceptible to mechanical application" of any test. Id. That is, any one factor—or one not listed—may be sufficient, depending upon the facts. Cf. BeoCare

5

Group, Inc. v. Morrissey, 124 F. Supp. 3d 696, 704 (W.D.N.C. 2015) (holding that sufficient contacts existed to establish personal jurisdiction over a defendant despite that defendant having no offices, property, or employees in the state and having never visited the state).

Cases across various district and circuit courts weigh heavily against finding purposeful availment when a defendant is not involved with the delivery or approval of communications received within a forum. See Alvord v. Fluent, No. 2:19-CV-885-DBB-CMR, 2020 WL 4346960 (D. Utah July 29, 2020) (finding no specific jurisdiction because Plaintiff failed to show Defendant specifically targeted citizens in the forum or had knowledge of the text messages before they were sent); Durward v. One Technologies, No. CV 19-6371-GW-AGRX, 2019 WL 4930229, at *1 (C.D. Cal. Oct. 3, 2019) (finding no specific jurisdiction because Defendant did not decide who received messages from third party marketers and did not establish an on-going relationship with California); XMission v. Fluent, LLC, 955 F.3d 833, 846 (10th Cir. 2020) (finding no specific jurisdiction because Plaintiff presented no specific evidence that Defendant delivered the emails itself or knew that any third-parties were sending emails to Utahns.); Zoobuh v. Williams, No. 2:13-CV-791 TS, 2014 WL 7261786, at *6 (d. Utah Dec. 18, 2014) (finding no specific jurisdiction because Defendant itself did not purposefully direct any activity towards Utah when the messages were sent by third parties). Additionally, nationwide marketing programs will not satisfy minimum contacts with a forum since there is no specific targeting of the forum state or its citizens. See Yates v. Motivation Indus. Equip. Ltd., 38 F. App'x 174, 178 (4th Cir. 2002) (finding no purposeful availment since there was no evidence Defendant's nationwide advertisements were directed toward North Carolina residents, that North Carolina residents responded to them, or that Defendant sent any products to North Carolina as a result of the advertisement); See Fed. Ins. Co.

v. Lake Short Inc., 886 F.2d 654, 658-59 (4th Cir. 1989) (holding an advertisement in a nationally distributed magazine does not alone constitute personal jurisdiction).

Defendant has previously been subject to a lawsuit regarding similar circumstances to the case at hand. Durward, 2019 WL 4930229, at *1. A separate plaintiff alleged Defendant violated a California statute based on unsolicited email messages sent by third parties. Id. Since Defendant did not personally send the messages, know where they were being sent, or specifically target the forum residents, the Court found Defendant did not purposefully avail itself to the forum, and therefore the Court did not have personal jurisdiction. Id. at *6.

Plaintiff argues the text messages allegedly sent by Defendant, and their nationwide marketing strategy, constitutes purposeful availment to the forum. (Doc. No. 29, p. 1). Defendant asserts it never personally sent or authorized the sending of the text messages. (Doc. No. 25-2, p. 2). Additionally, Defendant has no record of contractors directly sending the messages, and they expressly prohibit text messages to be sent for marketing purposes by their contractors. Id. at 3, 17. The only connection found between Defendant and the text messages was through a subcontractor of a California-based affiliate network the Defendant contracted with. Id. at 14. Defendant admits they engage contractors to advertise their products; however, there is no evidence they specifically target North Carolina or any citizens in the forum. (Doc. No. 25-1, p. 4, 5). Furthermore, Defendant is a Texas corporation with its principal place of business in Dallas, Texas, and it does not target North Carolina or its residents. Id. at 3.

Therefore, after considering the Consulting Eng'rs factors and the factual record, the Court concludes an absence of purposeful availment with the forum. Since Plaintiff has not made a prima facie showing that Defendant purposefully availed itself of North Carolina, the Court need

not consider the remaining factors in evaluating specific personal jurisdiction. Consulting Eng'rs, 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three."). Consequently, the Court may not exercise personal jurisdiction over Defendant based on their direct contacts with the forum.

### B. Agency Relationship Analysis

For a court to have personal jurisdiction over a principal corporation due to an agency relationship, Plaintiff must prove by a preponderance of the evidence that the subsidiary acted as an agent of the principal. Oppenheimer v. Chestnut-Toupin, No. 1:17-cv-00284-MR, 2018 WL 4682347, at 3* (W.D.N.C. Sept. 28, 2018). In North Carolina, in order to have an agency relationship, an agent must be (1) under the authority of the principal to act on their behalf, and (2) under the control of the principal. State v. Weaver, 607 S.E.2d 599, 606 (N.C. 2005). Furthermore, principals can be vicariously liable for the acts of their agent when the agent acts in the scope of the principal's authority and control. Meyer v. Holley, 537 U.S. 280, 285 (2003). Merely sending communications that contain a hyperlink to a secondary party's website however will not in itself be enough to show an agency relationship between the parties. See Phillips v. Worldwide Internet Sols., No. C 05-5125 SBA, 2006 WL 1709189, at *6 n.6 (N.D. Cal. June 20, 2006) (holding an email sent to Plaintiff containing a hyperlink to a website hosted by Defendant does not on its own show the entity that sent the email was acting on behalf of Defendant).

Moreover, while an agency relationship could subject the principal to jurisdiction, an actual agent must be specified and identifiable by the court to conduct the analysis. See Winters v. Grand Caribbean Cruises Inc., No. CV-20-00168-PHX-DWL, 2021 WL 511217, at *4 (D. Ariz. Feb. 11,

8

2021) (finding that the inability to ascertain who a possible agent was made it impossible for the Court to analyze the scope, if any, of a relationship between two entities). A court will dismiss a TCPA claim based on lack of personal jurisdiction when a complaint's allegations are based solely on an agency theory if a plaintiff has not presented evidence showing an agency relationship. Naiman v. TranzVia, LLC, No. 17-cv-4813-PJH, 2017 WL 5992123, *10 (N.D. Cal. 2017).

Plaintiff argues Defendant's actions in using marketers around the country to promote their products confers jurisdiction. (Doc. No. 29, p. 1). The Court is not persuaded. As stated above, nation-wide marketing programs do not on their own satisfy personal jurisdiction within a forum. Durward, 2019 WL 4930229, at *1. After conducting early discovery, Plaintiff failed to show that an agent of the Defendant sent the text messages. (Doc. No. 32, p. 3). The only connection found between Defendant and the text messages at issue was a subcontractor of a California based affiliate. (Doc. No. 25-2, p. 4). The subcontractor used a domain found in one of the messages, and Defendant's website was linked from the text messages. Id. This connection is not sufficient to establish an agency relationship since the Plaintiff has failed to provide any evidence Defendant authorized the subcontractor of their California affiliate to act or that Defendant controlled the subcontractor. See Weaver, 607 S.E.2d at 606. The record does not indicate Defendant, or an agent of Defendant, established minimum contacts with the forum. Consequently, the Court does not have personal jurisdiction over Defendant based on an agency relationship.

## IV. CONCLUSION

Based upon the record before the Court, the Court does not have personal jurisdiction over Defendant due to the lack of evidence of Defendant's contacts with the forum linked to Plaintiff's

9

cause of action. Furthermore, Plaintiff's inability to show an agent of Defendant sent the text messages in the claim precludes jurisdiction through an agency relationship.

IT IS THEREFORE ORDERED Defendant's Motion to Dismiss (Doc. No. 25) is GRANTED.

IT IS SO ORDERED.

Signed: August 10, 2021

Frank D. Whitney
United States District Judge